UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PHILLIP SEYMORE,

     Plaintiff,

v.                            Case No.:  2:23-cv-70-KCD

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

Plaintiff Phillip Seymore sues under 42 U.S.C. § 405(g) to challenge the Commissioner of Social Security's decision denying his application for disability insurance benefits and supplemental security income. (*See* Doc. 1.)[1] For the reasons below, the Commissioner's decision is reversed and remanded for further proceedings.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 14, 15, 16) and not fully repeated here. In short, Seymore filed for benefits in 2020. He claimed he could no longer work because of various medical ailments, including chronic headaches. (Tr. 270.) His

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

application was denied initially and again upon reconsideration. He then requested further review before an administrative law judge ("ALJ").

Following a hearing, the ALJ found that Seymore had severe impairments of lumbar and cervical degenerative disc disease, radiculopathy, stenosis, osteoarthrosis of the bilateral knees, obesity, sleep disorder, GERD, peripheral neuropathy, and headaches. (Tr. 18-19.) Even with these conditions, the ALJ concluded Seymore had the residual functioning capacity ("RFC") to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except only frequent reaching, handling, grasping, feeling, or fingering." (Tr. 22.)[2]

After considering the RFC and testimony from a vocational expert, the ALJ determined that Seymore could not perform his past relevant work, but could perform the jobs of order clerk, document preparer, and final assembler. (Tr. 25-27.) Because Seymore could work, the ALJ found him not disabled as

---

[2] An individual claiming disability benefits must prove he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

that term is defined in this context. (Tr. 27.) Seymore then exhausted his administrative remedies, and this lawsuit followed. (Doc. 1.)

## II. Legal Standard

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence both favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if it is supported by substantial evidence.

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Discussion

Seymore argues that because the ALJ failed to consider his memory problems resulting from a stroke and failed to consider his headaches when formulating the RFC, the disability decision is not supported by substantial evidence. The Court agrees with the latter argument.

In step four of the analytical process, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.950(a)(4)(iv). The RFC, defined as the most the claimant can still do despite his limitations, is based on an evaluation of all relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). In assessing the RFC, the ALJ must consider all impairments—severe and nonsevere. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

Seymore argues that substantial evidence does not support the RFC because the ALJ failed to consider and include any functional limitations caused by his headaches. The Commissioner, in turn, argues that the record

does not indicate any additional work-related limitations caused by headaches, citing instances where Seymore endorsed no complaints of headaches despite testifying to experiencing them "every day." (Doc. 15 at 11-12.)

As mentioned, the ALJ found that Seymore's headaches were a severe, medically determinable impairment that "significantly limit[s] the ability to perform basic work activities." (Tr. 19.) Social Security Ruling 19-4p[3] "provides guidance on how we establish that a person has a medically determinable impairment (MDI) of primary headache disorder and how we evaluate primary headache disorders in disability claims[.]" It also sets forth the criteria for evaluating headaches in assessing a person's RFC:

> 9. How do we consider an MDI of a primary headache disorder in assessing a person's residual functional capacity?
>
> If a person's primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, we assess the person's residual functional capacity (RFC). We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s).
>
> We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

---

[3] SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the Social Security Administration. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

SSR 19-4p, 2019 WL 4169635, at *7-8.

All impairments, severe and non-severe, must be considered when assessing a claimant's RFC. *Schink*, 935 F.3d at 1268-69. Yet nowhere in the discussion of Seymore's RFC did the ALJ discuss headaches. Seymore's headaches were found to be a severe impairment, which, by definition, limits significantly his ability to do basic work activities. *See Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). But the only limitations the ALJ noted in Seymore's RFC involved dexterity. The ALJ's RFC evaluation omits any discussion of the extent to which Seymore's medically determinable impairment of headaches altered his vocational capacity, failing his obligations under step four and SSR 19-4p.

The ALJ's omission of any discussion about the headaches at step four is particularly problematic because Seymore alleges that he suffers from chronic, daily headaches (Tr. 38, 42, 70, 265, 270, 315), and the medical records brim with references to ongoing pain caused by headaches. It isn't clear that the ALJ considered any of this evidence as required when building the RFC. (*See, e.g.*, Tr. 453, 458, 466, 480, 610, 611, 628, 653, 679-80, 687, 701, 705, 746, 771, 835, 862, 866, 902, 908, 986, 994, 1000, 1038, 1269, 1279, 1345, 1371, 1400, 1416, 1422); *see also Schink*, 935 F.3d at 1269-70 ("[F]ailure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal in its own right[.]").

While the ALJ did state that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted with the objective medical evidence and other evidence" (Tr. 22), that is not enough. The ALJ provided no real assessment of how Seymore's headaches affect his ability to work. That is error. *Schink*, 935 F.3d at 1269; *Cascio v. Comm'r of Soc. Sec.*, No. 8:20-CV-387-NPM, 2021 WL 4317387, at *6 (M.D. Fla. Sept. 23, 2021).

The Commissioner's contention that Seymore failed to meet his burden of proving that his headaches caused work-related limitations in excess of the assessed RFC (Doc. 15 at 11) ignores the issue. The ALJ was required to consider Seymore's headaches and the limitations they might cause in the first instance. At bottom, the ALJ failed to explain how Seymore's headaches qualified as a severe impairment and yet in no way impacted his vocational capacity. Because of this error, the hypothetical questions the ALJ posed to the vocational expert (and on which the ALJ relied) may not have accounted for all Seymore's functional limitations, particularly those pertaining to his ability to concentrate. Thus, the ALJ erred.

The Court also agrees with Seymore that this error is not harmless. The ALJ's disability decision is premised on the notion that Seymore can undertake sedentary work with no limitations beyond dexterity. If that is not true (which is wholly unknown), the entire house of cards collapses. The prejudice is self-evident. *See, e.g.*, *Morano-Phillip v. Comm'r of Soc. Sec.*, No. 6:20-CV-1892-

7

LHP, 2022 WL 562346, at *5 (M.D. Fla. Feb. 23, 2022) ("The Court cannot say that the ALJ's misstatement of the medical evidence of record is harmless, as it is clear that the ALJ relied upon his misstatement to determine the limitations set forth in the RFC.").

Seymore's remaining argument focuses on the ALJ's failure to incorporate his memory problems resulting from a stroke. These issues need not be addressed because the case is going back to the Commissioner for further consideration. *See, e.g.*, *Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986); *Bekiempis v. Colvin*, No. 8:16-cv-192-T-27TGW, 2017 WL 459198, at *5 (M.D. Fla. Jan. 17, 2017) (finding it appropriate to omit discussion of two additional arguments raised by claimant in light of remand).

## IV. Conclusion

In sum, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, it is now **ORDERED**:

1.     The decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) for the Commissioner to address the issue outlined above and take any other action deemed necessary.

2.     The Clerk is directed to enter judgment for Seymore and against the Commissioner and close the file.

**ENTERED** in Fort Myers, Florida on October 11, 2023.


Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record